E-FILED
Tuesday, 02 July, 2019 03:46:33 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| TERRY C. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 16-4204 |
| | ) | |
| SCHUYLER COUNTY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding pro se and presently civilly committed at Rushville Treatment and Detention Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging Fourteenth Amendment claims for excessive force, retaliation, and inhumane conditions of confinement. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Doc. 65). The motion is granted.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**FACTS[1]**

At all times relevant, Plaintiff was civilly detained at the Rushville Treatment and Detention Center ("Rushville" or "TDF"). Defendants were employed at the facility as security personnel.

On November 12, 2014, Defendant Clayton read Plaintiff his Miranda rights in the presence of Defendants Mayes, Rose, and Wear before attempting to interview Plaintiff about a staff assault. UMF 2-3. Defendant Winters was not in the room. UMF 9. Defendant Clayton told Defendants Mayes, Rose, and Wear to take Plaintiff "out of here" after Plaintiff remained silent. UMF 4.

Defendant Mayes left the room first. Defendants Rose and Wear flanked Plaintiff on each side before the three "squeezed" through the door at the same time. UMF 5. Once through the door, Plaintiff "felt Clayton kick [him] twice," first in the left foot, then Plaintiff's right leg. Pl. Dep. I 37:19-21.[2] Plaintiff later clarified that Defendant Clayton struck Plaintiff's left ankle, then his right calf. *Id.* 43:6-20; 51:10-11. Plaintiff does not know if Defendant Clayton "used one kick or two kicks, because…[Clayton] was behind [Plaintiff]." *Id.* 38:11-12. At his second deposition, Plaintiff testified that "it was three kicks. Because the first kick was the kick in the leg and then [Clayton] tried to trip me with a sweeping motion…so how about three contacts."

---

[1] Plaintiff did not respond to Defendants' motion for summary judgment despite being granted an additional ninety (90) days from the original deadline to do so. *See* Text Orders entered January 2, 2019, and February 4, 2019, respectively. Plaintiff was also warned of the consequences of failing to respond. *See* (Doc. 67). Accordingly, the Court considers the facts asserted in Defendants' motion as undisputed for purposes of this ruling. *See* Fed. R. Civ. P. 56(e)(2).

[2] Plaintiff was deposed on two separate occasions. The first deposition ("Pl.'s Dep. I") was taken on October 17, 2017. (Doc. 65-1). The second deposition ("Pl.'s Dep. II") was taken on June 25, 2018. (Doc. 65-5).

Pl.'s Dep. II 45:8-11.  Plaintiff immediately yelled that Defendant Clayton had assaulted him.  UMF 11.  Plaintiff suffered no physical injuries.  UMF 12-13.

Later that day, Defendants Rose and Wear drove Plaintiff to the Schuyler County Jail and transferred custody of Plaintiff to county officials.  UMF 14.  The jail is located 1.4 miles from the TDF and the drive between these two locations typically takes three-to-four (3-4) minutes.  UMF 15.  During transport, Plaintiff wore a jumpsuit without a coat or underwear.  Per the National Oceanic and Atmospheric Administration (NOAA), the recorded high and low temperatures on November 12, 2014 in Rushville, Illinois was 37 degrees Fahrenheit and 28 degrees Fahrenheit, respectively.  UMF 16.

## ANALYSIS

As a civil detainee at the time the relevant events took place, Plaintiff's rights arise under the Due Process Clause of the Fourteenth Amendment.  *Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015).

### Excessive Force & Failure to Intervene

Under the Fourteenth Amendment, a detainee "must show only that the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).  This inquiry turns on the facts and circumstances of each case and must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Factors a court may consider include, but are not limited to: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was

actively resisting." *Id.* An official who fails to intervene to try to prevent a known, unconstitutional use of force, despite a reasonable opportunity to do so, may be held liable under § 1983. *See Wilborn v. Ealey*, 881 F.3d 998, 1007 (7th Cir. 2018).

The force applied must rise to a level that warrants constitutional scrutiny: "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the [Constitution]." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (applying an objective reasonableness test to a pre-arraignment detainee's claims of excessive force); *see also Bell v. Wolfish*, 441 U.S. 520, 539 n. 21 (1979) ("There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned.").

The contact Plaintiff described was slight, Plaintiff was not injured, and Plaintiff has failed to present evidence that the force allegedly used rose to the level of constitutional concern. Accordingly, the Court finds that no reasonable juror could conclude that Defendant Clayton violated Plaintiff's constitutional rights. Because there was no underlying constitutional violation, Plaintiff's failure-to-intervene claim against Defendants Mayes, Rose, Wear, and Winters also fails. *Gill v. City of Milwaukee*, 850 F.3d 335, 343 (7th Cir. 2017).

**Conditions-of-Confinement**

In *Miranda v. Cty. of Lake*, 900 F.3d 335 (7th Cir. 2018), the Seventh Circuit extended the Supreme Court's reasoning in *Kingsley* to hold that courts must analyze a detainee's medical-care claims under an objective reasonableness standard, rather than the Eighth Amendment's deliberate indifference standard. *Id.* at 352-53. *Miranda* appears to limit its holding to "medical-care claims," while suggesting that courts should apply the objective reasonableness standard to all conditions-of-confinement claims brought by a detainee. *Id.* at 352 ("We see nothing in the logic the Supreme Court used in *Kingsley* that would support . . . dissection of the different types

of claims that arise under the Fourteenth Amendment's Due Process Clause."); *see also Green v. Beth*, --- F. App'x ---, 2019 WL 2082020, at *2 (7th Cir. 2019) (identifying objective reasonableness as the appropriate standard in a Fourteenth Amendment conditions-of-confinement claim, but deciding the case on other grounds) (non-precedential decision).

Regardless of the standard the Court applies to Plaintiff's claim arising from the car ride from the TDF to the Schuyler County Jail, Plaintiff's claims cannot survive. Under the objective reasonableness standard, a plaintiff must show that: (1) the official "acted purposefully, knowingly, or perhaps even recklessly" when taking the actions at issue—negligence, or even gross negligence, will not suffice; and (2) that those actions were objectively unreasonable. *Miranda*, 900 F.3d at 352-53. The deliberate indifference standard focuses on whether an official acted with deliberate indifference towards an objectively serious risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Extreme conditions-of-confinement are required to make out a claim under the latter standard. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019).

The outside temperatures at the time of Plaintiff's transport were not extreme, and nothing suggests that Plaintiff was forced to remain outside for a duration longer than it would have taken him to walk from a building to the vehicle and visa-versa. Plaintiff does not allege that Defendants Rose and Wear attempted to increase his discomfort (e.g. by opening a window during the ride, taking an unnecessarily long detour for no legitimate reason) or otherwise subjected Plaintiff to an excessive risk to his health or safety. At worst, Plaintiff had to endure a three-to-four (3-4) minute drive in temperatures he did not find comfortable.

A reasonable officer in Defendants' positions could not have appreciated that a short vehicle ride under those circumstances would have presented an excessive risk to Plaintiff's health or safety, and Plaintiff has not presented evidence to show that limiting his clothing to a

jumpsuit under those circumstances was objectively unreasonable. Accordingly, the Court finds that no reasonable juror could find that Defendants subjected Plaintiff to inhumane conditions of confinement.

**Retaliation**

Plaintiff alleged that Defendant Clayton kicked him because Plaintiff exercised his Fifth Amendment rights. Plaintiff has a Fifth Amendment right to refuse to answer questions that may later be used against him in a criminal prosecution. *Lefkowitz v. Turley*, 414 U.S. 70, 78 (1973). Without question, Plaintiff exercised that right on November 12, 2014, with his silence in response to Defendant Clayton's efforts to interview him about a crime with which he was later charged and convicted. *See People v. Johnson*, 2014 CF 34 (Schuyler Cty., Ill.) (available at: www.judici.com).

Officials may not attach a price to a detainee's exercise of a constitutional right. *Wilkie v. Robbins*, 551 U.S. 537, 555 (2007); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To prevail, Plaintiff must show that any price Defendant Clayton attached to Plaintiff's exercise of his right against self-incrimination was or could have been sufficient to compel waiver of that right. *See Vermillion v. Levenhagen*, 604 F. App'x. 508, 511 (7th Cir. 2015).

Defendant Clayton terminated his attempted interview when Plaintiff remained silent. Defendant Clayton's alleged use of force is the only action found in the record that could be construed as an attempt to retaliate against Plaintiff for invocation of his Fifth Amendment rights. As discussed above, any contact was slight, and Plaintiff has not presented evidence to show a triable issue of fact that this contact was sufficient to compel him or anyone else to waive the right in question. Any potential for retaliatory acts thereafter ceased when Plaintiff was transferred to a different facility later that day. Accordingly, the Court finds that no reasonable

juror could conclude that Defendant Clayton retaliated against Plaintiff for the exercise of a constitutional right.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Summary Judgment [65] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their own costs.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith.** See **Fed. R. App. P. 24(a)(1)(c);** see also *Celske v Edwards*, **164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith.");** *Walker v. O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 2nd day of July, 2019.

*s/Sara Darrow*
SARA DARROW
CHIEF U.S. DISTRICT JUDGE
